PATRICIA CORELLE PARKER, Plaintiff
v.
BYRON KEITH SCOTT, Defendant
No. COA07-935
Court of Appeals of North Carolina.
Filed June 17, 2008
This case not for publication
No brief filed for plaintiff-appellee.
Harrell Powell, Jr., for defendant-appellant.
CALABRIA, Judge.
Byron Keith Scott ("defendant") appeals from an order of the trial court, awarding primary physical custody of C.I.S. ("the minor child") to Patricia Corelle Parker ("plaintiff") and secondary physical custody to defendant. We affirm.
Defendant is the biological father and plaintiff is the biological mother of the minor child, born on 10 June 2002. Defendant and plaintiff never married; however, defendant, plaintiff, and the minor child resided with defendant's family in North Carolina from November 2003 to April 2004, when the relationship between defendant and plaintiff deteriorated. In April of 2004, plaintiff told defendant she was going to the store, but instead, left North Carolina and traveled to Florida with the minor child. Defendant followed plaintiff to Florida, and when he found her staying with her family, the two of them engaged in a physical struggle over the minor child. As a result of the physical struggle, plaintiff commenced a civil domestic violence action against defendant in Orange County, Florida. On 13 September 2004, the court entered a "judgment of injunction for protection against domestic violence[.]" Despite the fact that North Carolina was the minor child's home state, the Florida court granted defendant temporary custody. Defendant also was granted temporary custody pursuant to an Ex Parte Order entered in Davie County, North Carolina. Defendant and the minor child returned to North Carolina.
Plaintiff mistakenly believed that the injunction against defendant prevented her from visiting the minor child in North Carolina. Therefore, plaintiff did not travel to North Carolina to visit the minor child from the time of the entry of the injunction on 13 September 2004 until a temporary custody hearing was scheduled. On 17 May 2005, after the temporary custody hearing, the trial court ordered, inter alia, joint legal custody of the minor child. Specifically, the minor child continued to reside primarily with defendant, and the court ordered, inter alia, plaintiff's visitation with the minor child during the first week of every month.
In the year 2005, defendant did not comply with the court order regarding plaintiff's visitation with the minor child during the months of September, October and November. On 5 December 2005, plaintiff sought, and the trial court ordered, defendant to appear to show cause to determine why he should not be held in contempt of court for failing to obey the 17 May 2005 custody order. The court conducted a hearing. Defendant was not found in contempt, but the court did order plaintiff was entitled to twenty-four "make-up" visitation days. Since defendant did not cooperate with plaintiff in scheduling any "make-up" visitation days, the "make-up" visitation never occurred. In 2006, defendant did not cooperate by taking the child to visit with plaintiff during the months of February, March, June, September or October.
On 30 October 2006, the Honorable April C. Wood ("Judge Wood") heard plaintiff and defendant's competing claims for custody and support. On 29 January 2007, Judge Wood entered a corrected joint custody order ("2007 order") and awarded plaintiff primary physical custody of the minor child and defendant secondary physical custody. The trial court ordered defendant to pay child support to plaintiff in the amount of $457 per month, and all of plaintiff's child support arrearages were stricken. From the order, defendant appealed.
On appeal, defendant argues the trial court erred in (i) making findings of fact that were not supported by evidence in the record and (ii) concluding that it was in the best interests of the minor child to award primary physical custody to plaintiff.

I. Findings of Fact
Defendant contends that five of the trial court's findings of fact in the 2007 order were not supported by competent evidence in the record.
In an initial custody determination, a trial court shall award custody to such a parent "as will best promote the interest and welfare of the child." N.C. Gen. Stat. § 50-13.2(a) (2007). If a party moves for modification of a custody order, there must be a showing of changed circumstances. N.C. Gen. Stat. § 50-13.7 (2007). However, "[i]f a child custody order is temporary in nature and the matter is again set for hearing, the trial court is to determine custody using the best interests of the child test without requiring either party to show a substantial change in circumstances." LaValley v. LaValley, 151 N.C. App. 290, 292, 564 S.E.2d 913, 915 (2002).
In child custody cases, where the trial judge has the opportunity to see and hear the parties and witnesses, the trial court has broad discretion and its findings of fact are accorded considerable deference on appeal. So long as the trial judge's findings of fact are supported by competent evidence, they should not be upset on appeal.
Westneat v. Westneat, 113 N.C. App. 247, 250, 437 S.E.2d 899, 900-01 (1994) (quotation omitted). Therefore, "the trial court's findings of fact are conclusive if there is evidence to support them, even though the evidence might sustain a finding to the contrary." Raynor v. Odom, 124 N.C. App. 724, 729, 478 S.E.2d 655, 658 (1996).
In the instant case, according to the previous temporary custody order entered on 17 May 2005, the minor child was to reside primarily with defendant. On appeal, defendant does not argue that the trial court improperly applied the best interests of the child test rather than the substantial change in circumstances test. Therefore, we consider whether the trial court abused its discretion in determining that the award of primary physical custody to plaintiff was in the minor child's best interests.
Defendant avers the trial court's following findings of fact were not supported by competent evidence in the record:
10. The Court finds that Plaintiff is more likely to promote visitation between the child and Defendant than is Defendant likely to promote visitation between the child and plaintiff.
. . . .
13. . . . that Defendant has failed to take personal responsibility for complying with the visitational provisions of the Court's order and has displayed an attitude of indifference concerning whether the child has meaningful and appropriate contact with Plaintiff, contrary to the child's best interests.
. . . .
22. . . . This Court is concerned that these actions of the Defendant were calculated to frustrate the ability of the Court and of Plaintiff to provide suitable visitation for the child.
. . . .
25. Both parties are fit and proper parties to have custody of the child and it would serve the child's best interests for the Court to award them the joint care, custody and control of the child with Plaintiff serving as the primary custodian and Defendant serving as the secondary custodian with a regular visitation schedule.
During the October 2006 custody hearing, plaintiff testified that she had not received any visitation "make-up" days with the minor child and had not seen the minor child since September 2006. Defendant told her she "was going to have to come back to court to see [the minor child]." Plaintiff also testified that she previously was ordered to pay child support. At first, she borrowed money from her grandmother to pay her child support payments. However, after she became employed by Burger King, the State of North Carolina garnished her wages. At the time of the October 2006 hearing, plaintiff was employed at a daycare center in Florida operated by her grandmother and worked approximately thirty hours a week.
She further testified that in April 2004, when she moved to Florida because defendant was beating her, the minor child stayed in North Carolina. When plaintiff returned to North Carolina in 2005 to retrieve the minor child, defendant prevented her from leaving his house. In order to escape, plaintiff placed the minor child in her vehicle, told defendant they were going to the store, and then drove to Florida with her minor child. Defendant followed her to Florida and after finding plaintiff and the minor child, he "attacked" plaintiff in a parking lot. As a result of this "attack," plaintiff sought and received, in Florida, an injunction for protection against domestic violence from defendant.
After plaintiff received the protective order, defendant removed the minor child from the plaintiff's care pursuant to an Ex Parte Order, entered in Davie County, North Carolina. At the temporary custody hearing on 17 May 2005, the trial court ordered, inter alia, joint legal custody of the minor child, and the minor child continued residing primarily with defendant. The trial court ordered that plaintiff shall have visitation with the minor child and that transportation of the minor child shall be as follows:
When picking up the [minor] child for a visit, Plaintiff shall meet Defendant at a point one-half of the distance from her residence in Florida to the residence of the Plaintiff in North Carolina. The parties, through counsel, shall agree on this meeting point and include it in the formal order.
Plaintiff testified that the parties agreed upon the midpoint destination of Savannah, Georgia for the meeting point. However, on one occasion, when she traveled to pick up the minor child for her scheduled visitation, defendant failed to appear. On cross-examination, defendant denied his failure to appear at the midpoint destination to comply with the agreement to provide the opportunity for plaintiff to visit with the minor child. However, when plaintiff's attorney asked defendant about a police report plaintiff filed in Savannah, Georgia after he failed to appear with the minor child, defendant continued his denial but later admitted on cross-examination that there were a couple of months in 2006 where plaintiff did not have visitation with the minor child. Despite involving law enforcement to accomplish visitation with the minor child, plaintiff testified that it was important to her for the minor child to have a father in his life. She wanted the minor child to know his father since she grew up without a father because her father died in 1989.
Accordingly, since the trial judge had the opportunity to observe and hear both witnesses, we conclude competent evidence exists in the record to support the trial court's findings of fact. Westneat, 113 N.C. App. at 250, 437 S.E.2d at 901. This assignment of error is overruled.

II. Best interests of the minor child
Defendant next contends the trial court erred in concluding as a matter of law that it is in the minor child's best interests for plaintiff to have primary physical custody and defendant secondary custody of the minor child.
"A trial court is given broad discretion in determining the custodial setting that will advance the welfare and best interest of minor children." Cox v. Cox, 133 N.C. App. 221, 228, 515 S.E.2d 61, 67 (1999) (citation omitted).
Here, defendant testified that he was not able to drive the minor child to the agreed upon midpoint destination for visitation with the plaintiff because he was unable to leave work. Alternatively, he sent his grandmother to meet plaintiff. At the time of the October 2006 custody hearing, he currently resided with his grandmother.
On 28 September 2005, plaintiff gave birth to a second child, a daughter. At the October 2006 custody hearing, plaintiff testified that she and her daughter's father, Tyler Andrews ("Mr. Andrews"), were engaged and were living together. In addition, she attended nursing school at night and she worked approximately thirty hours a week at the daycare center operated by her grandmother. Mr. Andrews was employed full-time in the construction business, they resided in a house that Mr. Andrews' family owns and were able to pay the electricity and cable bills. She also testified that the minor child has a very close relationship with his half-sister and likes to hold and feed her. Moreover, she testified she is able to enroll the minor child in the daycare where she is employed and the daycare provides pre-school learning activities for the minor children. Therefore, after a careful review of the record, briefs and contentions of the parties, we conclude the trial court did not abuse its discretion in determining it was in the minor child's best interests for plaintiff to have primary physical custody and defendant secondary custody. This assignment of error is overruled.
Defendant has failed to bring forth any arguments regarding his remaining assignments of error, and therefore has abandoned these assignments of error pursuant to N.C.R. App. P. 28(b)(6) (2007). In conclusion, competent evidence exists in the record to support the trial court's findings of fact and its conclusions of law that it is in the minor child's bests interests for plaintiff to have primary physical custody and defendant secondary custody of the minor child.
Affirmed.
Chief Judge MARTIN and Judge GEER concur.
Report per Rule 30(e).